**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TANYA LEA FRAZIER-LEFEAR,

    Defendant - Appellant.

No. 16-6128
(D.C. Nos. 5:15-CV-00934-F and
5:10-CR-00105-F-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **PHILLIPS** and **McHUGH**, Circuit Judges.
_____

Defendant Tanya Lea Frazier-LeFear appeals from a district court order dismissing her motion for relief under 28 U.S.C. § 2255 based on a provision in her plea agreement waiving her right to collaterally challenge her sentence. This court has granted her a certificate of appealability (COA) on the following issue:

> Did the district court err in concluding the claim set out in Frazier-LeFear's 28 U.S.C. § 2255 motion does not fall within the miscarriage-of-justice exception to appellate and collateral-rights waivers set out in *United States v. Hahn*, 359 F.3d 1315, 1327 (10th Cir. 2004) (en banc)? *See, e.g.*, *United States v. Daugherty*, No. 4:07-CR-00087, 2016 WL 4442801 (N.D. Okla.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Aug. 22, 2016) (holding that identical claim to that asserted by Frazier-LeFear in this case does fall within *Hahn*'s miscarriage-of-justice exception).

Order filed September 22, 2016, at 1. Upon consideration of the parties' briefing, we hold that under our controlling precedent Ms. Frazier-LeFear's § 2255 motion does not fall within *Hahn*'s miscarriage-of-justice exception and, accordingly, we affirm the decision of the district court.

## I. PROCEDURAL HISTORY

Ms. Frazier-LeFear pleaded guilty to distributing cocaine base in violation of 21 U.S.C. § 841(a)(1). Her plea agreement included a provision "waiv[ing] her right to . . . [a]ppeal, collaterally challenge, or move to modify . . . her sentence as imposed by the Court and the manner in which the sentence is determined, provided the sentence is within or below the advisory guideline range determined by the Court to apply to this case." District Court Doc. 33 at 6.

In calculating Ms. Frazier-LeFear's offense level and criminal history, the Presentence Investigation Report (PSR) invoked the career-offender enhancement in U.S. Sentencing Guidelines Manual (USSG) § 4B1.1, resulting in a sentencing range of 151-188 months. Her counsel conceded that two prior convictions, one involving escape from a penitentiary, qualified as crimes of violence supporting imposition of the enhancement. The district court adopted the PSR, but varied downward to impose a sentence of 96 months. Ms. Frazier-LeFear did not take an appeal.

Following issuance of *Johnson v. United States*, ___U.S.___, 135 S. Ct. 2551 (2015) (holding residual clause in definition of crime of violence used in the Armed

2

Career Criminal Act (ACCA) unconstitutionally vague), Ms. Frazier-LeFear filed the instant § 2255 motion claiming her trial counsel had been constitutionally ineffective in failing to challenge application of the career-offender enhancement. She argued that her escape conviction qualified as a crime of violence solely on the basis of a residual clause in USSG § 4B1.2 containing language identical to the ACCA's residual clause invalidated in *Johnson*. In short, her § 2255 motion alleged that her sentence was subject to constitutional challenge on the grounds later recognized in *Johnson* and that her counsel's failure to anticipate *Johnson* and raise such a challenge reflected ineffective assistance. The government opposed the motion arguing, among other things, that it was subject to the collateral-challenge waiver in the plea agreement.

The district court stayed proceedings on the § 2255 motion awaiting a decision regarding *Johnson*'s retroactive application on collateral review in *Welch v. United States*, ___U.S.___, 136 S. Ct. 1257 (2016). In the meantime, this circuit clarified that *Johnson*'s holding with respect to the ACCA's residual clause applied to the residual clause in the career-offender guideline as well. *See United States v. Madrid*, 805 F.3d 1204, 1210 (10th Cir. 2015). After *Welch* confirmed *Johnson*'s retroactive applicability, *see Welch*, 136 S. Ct. at 1265, the district court lifted its stay and ultimately dismissed the § 2255 motion by enforcing the waiver in the plea agreement. Noting conflicting decisions from district courts within the circuit regarding enforcement of collateral-challenge waivers with respect to *Johnson* claims, this court granted a COA.

3

## II. RELEVANT CIRCUIT PRECEDENT

In *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001), this court held "that a waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." But "the constraints which apply to a waiver of the right to direct appeal also apply to a waiver of collateral attack rights." *Id.* In particular, "the same exceptions to the waiver of the right to appeal, if they arise, would be available to the waiver of the right to collateral attack." *Id.* A few years later the en banc court clarified what those exceptions are, under the general rubric of "miscarriage of justice":

> Appellate waivers are subject to certain exceptions, including [1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.

*Hahn*, 359 F.3d at 1327 (internal quotation marks omitted). No miscarriage of justice arises from a waiver "unless enforcement would result in one of the four situations enumerated." *Id.*; *see United States v. Polly*, 630 F.3d 991, 1001 (10th Cir. 2011) (explaining that four exceptions listed in *Hahn* are exclusive means to establish miscarriage of justice). We further narrowed the fourth exception by holding that the error making a waiver unlawful "must seriously affect the fairness, integrity or public reputation of judicial proceedings, as that test was employed [for plain-error review] in *United States v. Olano*, 507 U.S. 725, 732 (1993)." *Hahn*, 359 F.3d at 1327

4

(parallel citations, brackets, and internal quotation marks omitted).  This exception is the focus of the instant appeal.

Following *Hahn*, defendants attempted to sever the "otherwise unlawful" language of the fourth exception from its association with "the waiver," by asserting legal error involving other aspects of the proceedings (typically the determination of sentence) as a basis for finding a miscarriage of justice.  We rejected such arguments, making it clear that "'[t]his exception looks to whether the *waiver* is otherwise unlawful, not to whether another aspect of the proceeding may have involved legal error.'"  *Polly*, 630 F.3d at 1001-02 (quoting *United States v. Smith*, 500 F.3d 1206, 1213 (10th Cir. 2007) (internal quotation marks omitted)); *United States v. Shockey*, 538 F.3d 1355, 1357 (10th Cir. 2008) (same); *see also United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007) ("Our inquiry [under the fourth exception] is not whether the sentence is unlawful, but whether the waiver itself is unlawful because of some procedural error or because no waiver is possible.").  We explained that "'[t]o allow alleged errors in computing a defendant's sentence to render a waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive.'"  *Shockey*, 538 F.3d at 1357 (quoting *Smith*, 500 F.3d at 1213).  Applying this understanding of the exception, we held it to be inapplicable to errors distinct from the waiver itself,[1] obviating consideration of whether such errors met

---

[1] Of course, a defendant may preserve a right to appeal isolated sentencing error by including an explicit exception to that effect in his plea waiver.  *See, e.g.*, *United States v. Groves*, 369 F.3d 1178, 1182 (10th Cir. 2004).

the *Olano* standard for error that seriously affects the fairness, integrity or public reputation of judicial proceedings. *See Polly*, 630 F.3d at 1001-02; *Smith*, 500 F.3d at 1212-13; *Sandoval*, 477 F.3d at 1208.[2]

Two ancillary points touched on in our waiver precedent are germane here. First, the fact that the alleged error arises out of a change in the law subsequent to the defendant's plea does not alter the above analysis. We have pointedly characterized this conclusion as "obvious" for the following reasons:

> The essence of plea agreements . . . is that they represent a bargained-for understanding between the government and criminal defendants in which each side foregoes [sic] certain rights and assumes certain risks in exchange for a degree of certainty as to the outcome of criminal matters. One such risk is a favorable change in the law. To allow defendants or the

---

[2] We note that *Hahn* itself indirectly lent some impetus to the line of argument that *Polly*, *Smith*, and *Sandoval* explicitly rejected. In *Hahn*, the appellant claimed the district court erroneously concluded it had no discretion to make his sentence run concurrently with a prior sentence. This court held the claim was properly deemed waived "even if the district court's conclusion regarding its lack of sentencing discretion was in error." *Hahn*, 359 F.3d at 1329. We said: "Subjecting Mr. Hahn to a sentence sanctioned by Congress does not constitute an error seriously affecting the fairness, integrity or public reputation of judicial proceedings. As such, we find that enforcing Mr. Hahn's waiver of appellate rights would not constitute a miscarriage of justice." *Id.* By looking to the failure of appellant's showing under the plain-error standard, *Hahn* could have been read as suggesting this was the exclusive basis for rejecting the miscarriage-of-justice exception (though *Hahn*'s characterization of that standard as a "further" limitation on the situation described in the fourth exception, *id.* at 1327, suggests otherwise). But *Hahn* did not include any explicit holding to that effect—which, again, would have largely gutted the waiver it was intended to sanction. Thus, *Hahn* may have opened a debate over the role of alleged sentencing error in the operation of the fourth exception; but it did not dictate an answer. That came with the subsequent precedent discussed above, to which we adhere. Of course, we do not mean to suggest any particular order of analysis under the fourth exception; in any given case, we (and the district courts) may reject application of that exception based on a failure to satisfy the plain-error standard without reaching a perhaps more difficult question as to whether the error at issue is sufficiently tied to the lawfulness of the waiver itself.

6

government to routinely invalidate plea agreements based on subsequent changes in the law would decrease the prospects of reaching an agreement in the first place, an undesirable outcome given the importance of plea bargaining to the criminal justice system.

*United States v. Porter*, 405 F.3d 1136, 1145 (10th Cir. 2005).[3] Second, our cases do not reflect the recognition of any special exception for errors of constitutional dimension. *See, e.g.*, *United States v. Pinson*, 584 F.3d 972, 976 (10th Cir. 2009) (enforcing waiver as to First and Sixth Amendment claims); *United States v. Lyons*, 510 F.3d 1225, 1233 (10th Cir. 2007) (enforcing waiver as to constitutional speedy trial claim); *Cockerham*, 237 F.3d at 1187, 1191 (enforcing waiver as to ineffective assistance of counsel claims that did not relate to validity of plea).[4]

## III. ENFORCEMENT OF WAIVER IN THIS CASE

The dispositive question here, encapsulated in the order granting a COA, is

---

[3] A defendant may preserve appellate rights in this respect as well by including an explicit exception in his waiver for favorable changes in the law. *See, e.g.*, *United States v. Taylor*, 413 F.3d 1146, 1151-52 (10th Cir. 2005).

[4] While in *Groves*, discussed in note 1 *supra*, we equated an unconstitutional sentence with an "illegal sentence," we did so not for the purpose of categorically excepting it from waiver as a miscarriage of justice, but for the limited purpose of applying a particular waiver provision that included an explicit exception for illegal sentences. *See* 369 F.3d at 1182. We have made it clear that illegal sentences in this sense do not trigger the "otherwise unlawful" miscarriage-of-justice exception. *See Shockey*, 538 F.3d at 1357-58; *see also United States v. Thornburgh*, 368 F. App'x 908, 913 (10th Cir. 2010) (discussing *Shockey* and *Groves*). Of course, sentences that are illegal in the specific sense of exceeding statutory authorization are excluded from waiver under the third miscarriage-of-justice exception set out in *Hahn*. But this sense is limited to terms of imprisonment or supervised release that exceed the statutory maximum for the offense, see, e.g., *United States v. Cudjoe*, 634 F.3d 1163, 1166 (10th Cir. 2011), and orders for restitution beyond the amount authorized by Congress, *see, e.g.*, *United States v. Gordon*, 480 F.3d 1205, 1209-10 (10th Cir. 2007), neither of which is implicated here.

7

whether enforcement of the collateral-challenge waiver in Ms. Frazier-LeFear's plea

agreement would entail a miscarriage of justice.  We know from the precedent

summarized above that our analysis is limited to the four exceptions listed in *Hahn*.

And of these, the first three are neither argued nor applicable.  The issue, therefore, is

whether there are grounds for holding that "the waiver is otherwise unlawful."  *Hahn*,

359 F.3d at 1327.  Noting our case law holding that this exception is implicated only

when the asserted legal error concerns the waiver itself, rather than some other aspect

of the proceedings such as the determination of the defendant's sentence, the district

court concluded enforcement of Ms. Frazier-LeFear's waiver to preclude her

*Johnson*-based sentencing challenge would not entail a miscarriage of justice.  We

agree that result is required by this court's precedent.

## A.  Miscarriage of Justice is not Reducible to Plain Error

The order granting COA notes that another district court in this circuit had

held that enforcement of a collateral-challenge waiver with respect to an identical

*Johnson*-based sentencing challenge would result in a miscarriage of justice.  *See*

*United States v. Daugherty*, No. 07-CR-87-TCK, 2016 WL 4442801 (N.D. Okla.

Aug. 22, 2016).  *Daugherty* proceeded directly to the *Olano* standard for identifying

error qualifying as a miscarriage of justice, without first confirming that the error

related to the waiver itself.  The district court emphasized that in applying *Johnson*'s

holding about the vagueness of the ACCA to the similarly worded career-offender

guideline in *Madrid*, we had stated that the resultant error was remediable on

plain-error review, i.e., it "seriously affects the fairness, integrity, or public

8

reputation of judicial proceedings." *Daugherty*, 2016 WL 4442801, at \*7 (quoting *Madrid*, 805 F.3d at 1211). On that basis, the district court held enforcement of collateral-review waivers to bar *Johnson*-based sentencing attacks entails a miscarriage of justice within the meaning of the fourth exception specified in *Hahn*. *See also Jaramillo v. United States*, Nos. 1:16-CV-87 TS & 1:05-CR-136 TS, 2016 WL 5947265 (D. Utah Oct. 13, 2016) (following *Daugherty*).

The analytical mistake in *Daugherty* is evident from our discussion of circuit precedent. Our case law explaining *Hahn*'s fourth miscarriage-of-justice exception makes it clear that it is the waiver, not some other aspect of the proceeding, that must be unlawful to undermine the waiver. Ms. Frazier-LeFear's *Johnson*-based challenge to the career-offender enhancement is a challenge to the lawfulness of her sentence, not to the lawfulness of her waiver. As such, however it may be characterized for purposes of the *Olano* plain-error standard, under our precedent it does not provide a basis for holding enforcement of the waiver to be a miscarriage of justice.

A second consideration, unique to the waiver context, bolsters that conclusion. As noted earlier, this court has repeatedly admonished that creating an exception for sentencing errors "'would nullify the waiver based on the very sort of claim it was intended to waive.'" *Shockey*, 538 F.3d at 1357 (quoting *Smith*, 500 F.3d at 1213). In the plain-error context we have adopted a presumption that obvious sentencing errors satisfy the *Olano* standard. *See United States v. Sabillon-Umana*, 772 F.3d 1328, 1333-34 (10th Cir. 2014). Thus, if *Hahn*'s fourth miscarriage-of-justice exception were to turn solely on satisfaction of the *Olano* standard, ignoring the

9

requisite connection between the alleged error and the lawfulness of the waiver itself, claims of sentencing error—the very sort of claim intended to be waived[5]—would routinely trigger the exception and nullify the waiver. In short, district court decisions like *Daugherty* and *Jaramillo*, which have followed this truncated analytical course, run contrary to the fundamental thrust of this circuit's waiver jurisprudence.

## B. Constitutional Character of Claim

Ms. Frazier-LeFear advances two arguments based on the constitutional character of the error she asserts. First, she argues that she did not agree to be sentenced unconstitutionally. This argument involves the "'logical failing[] of focusing on the result of the proceeding, rather than on the right relinquished, in analyzing whether an appeal waiver is [valid].'" *Polly*, 630 F.3d at 1002 (quoting *Smith*, 500 F.3d at 1213). Ms. Frazier-LeFear agreed to relinquish her right to collaterally attack any sentence within or below the guideline range determined by the district court. The fact that her relinquishment of this right results in the lost opportunity to raise a constitutional challenge under *Johnson* reflects the natural operation, not the invalidity, of the waiver.

She also argues more generally that the constitutional character of her claim should except it from the operation of her waiver. She cites a Seventh Circuit case

---

[5] Again, we have repeatedly enforced waivers as to sentence-determination challenges. *See, e.g.*, *Polly*, 630 F.3d at 1001-02; *Smith*, 500 F.3d at 1212-13. The miscarriage-of-justice standard pointedly makes only one explicit exception for a particular type of sentencing error—a sentence in excess of the authorized statutory maximum—which does not apply here.

stating "there are limits to waiver; if the parties stipulated to trial by 12 orangutans the defendant's conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept." *United States v. Bownes*, 405 F.3d 634, 637 (7th Cir. 2005) (internal quotation marks omitted).  But *Bownes* actually refused to include in this "minimum of civilized procedure" notion an exception for favorable changes in the law—even one reflecting a "sea change" of the sort brought about by *United States v. Booker*, 543 U.S. 220 (2005).  *See Bownes*, 405 F.3d at 637-38.  Given our own precedent enforcing waivers with respect to both changes in law and claims of constitutional error (except those which render the waiver itself unlawful), this panel is not in a position at this late date to recognize a limitation on waiver for constitutional challenges to sentence based on post-plea changes in law. That is not to say, of course, that a knowing and voluntary waiver could never be unlawful.  Anticipating the objection that our strict view of the fourth miscarriage-of-justice exception effectively renders it a null set, the government notes that waivers may be unlawful for other reasons, such as a waiver impermissibly permitting the government to breach the plea agreement, *see United States v. Parker*, 720 F.3d 781, 787 n.7 (10th Cir. 2013) (stating "claims of government breach of the plea agreement are not subject to waiver").

11

## IV.  CONCLUSION

Our precedent directs that appeal/collateral review waivers are enforceable (1) with respect to claims of error that do not render the waiver itself unlawful, even if the alleged error (2) arises out of a subsequent change in law and (3) is of a constitutional dimension.  Unless and until this court disavows one of these basic premises, waivers of the sort at issue in this case must be enforced when timely raised by the government.

The judgment of the district court is affirmed.

Entered for the Court


Carolyn B. McHugh
Circuit Judge